UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HOSPITAL FOR SPECIAL CARE, ) <br> on assignment of Kelly Levine, ) <br>     *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> MALLORY INDUSTRIES INC., ) <br> CREATIVE PLAN ADMINISTRATORS ) <br> LLC, UNDERWRITING ) <br> MANAGEMENT EXPERTS, ) <br>     *Defendants*. ) <br> ) <br> -and- ) <br> ) <br> CREATIVE PLAN ADMINISTRATORS ) <br> LLC, ) <br>     *Defendant/ Third-Party Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> CHRIS SOLEAU & ASSOCIATES, LLC, ) <br> ) <br>     *Third-Party Defendant*. ) | 3:21-CV-00199 (SVN) <br><br><br><br><br><br> May 6, 2022 |

**RULING AND ORDER ON UNDERWRITING MANAGEMENT EXPERTS'
MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

    In this action, Plaintiff Hospital for Special Care ("HSC") alleges that it has not been paid for services rendered to an individual, Kelly Levine, in violation of the Employment Retirement Income Security Act ("ERISA"). The defendants in the case are: (1) Mallory Industries Inc. ("Mallory"), which provided an employee welfare benefit plan that covered Ms. Levine at all relevant times (the "Mallory Plan"); (2) Creative Plan Administrators ("CPA"), which served as the claims administrator for the Mallory Plan; and (3) Underwriting Management Experts ("UME"), which served as the managing general underwriter to Gerber Life Insurance Company

("Gerber Life"). Gerber Life, which is not a party to this action, issued an excess loss policy to Mallory to insure Mallory against certain high-dollar insurance claims submitted to the Mallory Plan.

In response to the complaint, Mallory filed an answer, affirmative defenses, and various crossclaims, including, relevant here, crossclaims against UME for breach of contract and bad faith. *See* ECF No. 32. UME has now moved to dismiss Mallory's crossclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, or in the alternative, to compel arbitration between Mallory and UME. For the reasons set forth below, the Court agrees with UME that Mallory has failed to state a claim upon which relief can be granted. The Court therefore GRANTS UME's motion to dismiss Mallory's crossclaims.[1]

## I.  FACTUAL BACKGROUND

This action generally involves HSC's pursuit of reimbursement for medical services it provided to a patient, Ms. Levine, and the various Defendants' disagreement over who is responsible for the reimbursement. The following allegations, which are taken from both the underlying complaint and Mallory's crossclaims, provide the necessary context for this ruling. The Court takes these allegations as true for purposes of the present motion. *See Endurance Am. Specialty Ins. Co. v. William Kramer & Assocs., LLC*, No. 3:18-CV-00192 (MPS), 2020 WL 5548855, at *1 (D. Conn. Sept. 16, 2020).

Mallory is a small Connecticut employer that offers a self-funded health plan to its employees. ECF No. 32 ¶¶ 1–2. Because it is a small employer, Mallory obtained an excess loss insurance policy through Gerber Life to protect itself from having to pay large insurance claims under the Mallory Plan. ECF No. 32 ¶ 13. In its crossclaims, Mallory refers to this policy as the

---

[1] As the Court has determined that Mallory fails to state a claim upon which relief can be granted, it need not, and does not, address UME's alternate argument regarding arbitration.

"UME Policy." *Id.* The Court, however, will refer to this policy as the Excess Policy. The Excess Policy became effective on January 1, 2016. *Id.* ¶ 14. UME served as the managing general underwriter for Gerber Life in connection with the Excess Policy. *Id.* As managing general underwriter, UME processed claim reimbursement requests under the Excess Policy. *Id.* ¶ 14. UME in turn employed its own managing general agent, Chris Soleau and Associates ("Soleau"), to assist it. *Id.* ¶ 16.

In January of 2019, in order to administer the Mallory Plan effectively, Mallory hired CPA as third-party administrator for the Mallory Plan. *Id.* ¶¶ 4–5. Pursuant to Mallory's agreement with CPA, CPA took responsibility for all management and administrative functions of the Mallory Plan, such as maintaining necessary records for coverage and benefits claims, handling benefit claims, and adjudicating claims by plan participants. *Id.* ¶¶ 6–8. CPA was also responsible for managing the Excess Policy by (i) notifying Gerber Life of potential large claims; (ii) filing any claims for benefits under the Excess Policy; and (iii) making sure the Excess Policy stayed in force by promptly forwarding to Mallory any premium notices received. *Id.* ¶ 12. In fulfilling these responsibilities, CPA was to coordinate with Soleau. *Id.* ¶ 16.

Shortly after hiring CPA, Mallory sent CPA a check for the January 2019 premium payment for the Excess Policy, which CPA was to forward to UME. *Id.* ¶ 17. However, CPA did not forward the premium to UME. *Id.* ¶ 20. In late January of 2019, Soleau, on behalf of UME, emailed CPA, alerting it that it "need[ed] the new carrier bound asap." *Id.* ¶ 18. Still, CPA never forwarded the premium. *Id.* ¶ 21. Mallory also sent monthly premium checks to CPA in February and March of 2019, but CPA never forwarded those payments to UME, either. *Id.* ¶ 19. As a result of this failure to forward premiums, coverage under the Excess Policy lapsed in early 2019. *Id.* ¶ 21. In April of 2019, CPA, without informing Mallory, began attempting to restore the excess

3

loss coverage. *Id.* ¶ 23. Ultimately, in order to restore the lapsed coverage, UME required Mallory to undergo a new underwriting and risk assessment and pay increased premiums for less coverage. *Id.* ¶¶ 23–24.

Meanwhile, between February and June of 2019, Ms. Levine received medical services from HSC, a long-term acute care hospital in Connecticut. ECF No. 1 ¶¶ 1, 6. At all relevant times, Ms. Levine was either a participant in or an insured of the Mallory Plan. *Id.* ¶ 5. At the beginning of her treatment, Ms. Levine signed an assignment of benefits form, allowing HSC to seek reimbursement directly from her insurers for any medical services performed. ECF No. 1-1 at 9. The services Ms. Levine received were both medically reasonable and necessary. *Id.*

Upon Ms. Levine's discharge in June of 2019, and pursuant to the assignment of benefits she had signed, HSC attempted to recover for the services performed for Ms. Levine by serving a demand for reimbursement of $302,193.00 on Mallory, CPA, and UME. ECF No. 1 ¶ 8. The claim was denied initially and after appeal. *Id.* ¶¶ 9-13. Among the reasons provided for the denials were the lapse in coverage and the alleged non-disclosure of Ms. Levine's full medical condition and inpatient status during re-underwriting. *Id.*; ECF No. 32 ¶¶ 21, 23-28. To date, HSC has not been paid for the services it provided to Ms. Levine. ECF No. 1 ¶¶ 14-15, 18.

In February of 2021, HSC filed its complaint against CPA, Mallory, and UME, contending that it is owed $302,193.00 for its care of Ms. Levine. *Id.* ¶ 18. In May of 2021, Mallory filed its answer and asserted crossclaims against both UME and CPA. *See* ECF No. 32. Relevant to the present motion, Mallory brings crossclaims for breach of contract and bad faith against UME. *Id.* at 21–22.

HSC filed a notice of voluntary dismissal of its claims against UME in June of 2021. ECF No. 44. Therefore, UME remains in this action solely by virtue of the crossclaims at issue in this

4

motion. UME has moved to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 47.

## II. LEGAL STANDARD

When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking its analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The Court is not, however, "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion under Rule 12(b)(6), a court is normally required "to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). But, in certain circumstances, a court "may permissibly consider documents other than the complaint." *Id.* Specifically, "documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.*; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"). Further, "even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers*, 282 F.3d at 152 (internal quotations omitted).

## III. DISCUSSION

Mallory asserts crossclaims for breach of contract and bad faith. Additionally, in a supplemental sur-reply memorandum in opposition to UME's present motion to dismiss—which Mallory filed without leave of court—Mallory argues that, despite not labeling them as such, the crossclaims adequately allege a claim for indemnification against UME. The Court addresses each argument in turn.

### A. Breach of Contract

The Court first addresses Mallory's breach of contract claim. "A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits." *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 893 (2d Cir. 2019). Under Connecticut law, to adequately allege a claim for breach of contract, the Plaintiff must allege "formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *CCT Commc'ns, Inc. v. Zone Telecom, Inc.*, 172 A.3d 1228, 1240 (Conn. 2017). The present dispute centers primarily around

whether there was formation of a valid contract between Mallory and UME such that Mallory can state a claim for breach.

In its crossclaims against UME, Mallory alleges that it had a "stop-loss policy in place through UME as managing general underwriter for [a] Gerber Life Insurance Policy." ECF No. 32 ¶ 13. Although Mallory repeatedly refers to this policy as the "UME Policy," *see id.*, there is no question that Mallory is in fact referring to the Excess Policy between Mallory and Gerber Life. Accordingly, the question is whether UME assumed obligations under the Excess Policy such that it can be sued for breach by Mallory. *Id.* ¶¶ 32–34.

The Court first notes that Mallory neglected to attach a copy of the Excess Policy to its crossclaims. But UME attached the Excess Policy as an exhibit to its motion to dismiss the crossclaims, *see* ECF No. 47-4, and Mallory has not disputed the authenticity of the exhibit. As the Excess Policy was neither attached to the crossclaims nor explicitly incorporated by reference into them, the Court must determine whether the policy was "integral" to the drafting of the crossclaims such that it may be considered by the Court in ruling on UME's motion to dismiss.

Material is deemed integral to the complaint, and thus eligible for consideration on a motion to dismiss, where the "plaintiff rel[ies] on the terms and effect of the document in drafting the complaint." *See Glob. Network Comm'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Chambers*, 282 F.3d at 153). In most instances where a document is deemed integral to a complaint, "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason— usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Global Network*, 458 F.3d at 157. This

exception, the Second Circuit reasoned, "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Id.*

In the present case, the Excess Policy is integral to the crossclaims, as Mallory's breach of contract claim relies wholly on its terms. The Excess Policy is *the* legal document upon which Mallory's crossclaims "stand or fall." *See id.* The Court will thus consider the Excess Policy in ruling on UME's motion to dismiss.[2]

UME argues that it is not a party to the Excess Policy and thus cannot be sued under it for breach. The Court agrees. The Excess Policy is unquestionably a contract between Gerber Life and Mallory; Gerber Life Insurance Company is defined as the "Company" under the policy, while Mallory is the "Contractholder." ECF No. 47-4 at 3. According to the crossclaims, UME was responsible for "process[ing] all claim reimbursement requests" using the applicable plan documents, ECF No. 32 ¶ 14, but it is undisputed that UME's name does not appear in the policy itself. Mallory itself calls UME a "non-party" to the Excess Policy in passing, ECF No. 68 at 2, and Mallory's counsel conceded at oral argument that UME is not a party to the Excess Policy. Mallory also has essentially conceded, both at argument and in its sur-reply brief, that its breach

---

[2] It appears Mallory attempted the type of "clever drafting" contemplated in *Global Network*, as even a cursory review of the Excess Policy reveals that its plain text "undermine[s] the legitimacy" of Mallory's breach of contract claim against UME. 458 F.3d at 157. Mallory cannot escape the text of the Excess Policy merely by failing to attach it to the crossclaims.

of contract claim against UME is not well-founded.  Mallory's breach of contract claim against UME thus cannot stand.[3]

Recognizing the flaws in its original breach of contract claim, Mallory has attached a second contract received in discovery, the UME/Gerber Life Managing General Underwriter Agreement, to its sur-reply brief.  Mallory claims that this contract will "assist in illuminating why Mallory has stated a plausible claim for third-party liability and relief against UME."  ECF No. 89 at 2; ECF No. 90.  But, unlike the Excess Policy, this new contract is *not* integral to Mallory's crossclaims and is thus improper for the Court to consider on a motion to dismiss.  As noted above, a "necessary prerequisite" for material to be considered integral to a complaint, such that it may be considered on a motion to dismiss, is that the plaintiff "rely on the terms and effect of the document in drafting the complaint."  *Glob. Network*, 458 F.3d at 156 (quoting *Chambers*, 282 F.3d at 153) (alterations omitted).  Here, it would have been impossible for Mallory to rely on the UME/Gerber Life Managing General Underwriter Agreement in drafting its crossclaims in May of 2021, as Mallory only received the contract in March of 2022.  *See* ECF No. 89 at 1.  Thus, the UME/Gerber Life Managing General Underwriter Agreement is not integral to the complaint and the Court will not consider its terms in deciding this motion.

---

[3] The Court notes that the CEO of UME, Anne Marie Chapman, accepted Mallory's application for the Excess Loss policy on behalf of Gerber Life.  *See* ECF No. 47-4 at 6.  But even assuming that UME acted as Gerber Life's agent in this transaction, it has long been the law of Connecticut that "the agent is not liable where, acting within the scope of his authority, he contracts with a third party for a known principal." *Scribner v. O'Brien, Inc.*, 363 A.2d 160, 168 (Conn. 1975) (citing *Whitlock's, Inc. v. Manley*, 196 A. 149, 150 (Conn. 1937)); *Behlman v. Universal Travel Agency, Inc.*, 496 A.2d 962, 963–64 (Conn. App. Ct. 1985) ("An agent, by making a contract only on behalf of a competent disclosed principal whom he has the power to bind, does not thereby become liable for its nonperformance").  Mallory does not argue—nor could it, given the record before the Court—that UME did not disclose it was acting on behalf of Gerber Life in connection with securing the Excess Policy.  Thus, even assuming UME acted as Gerber Life's agent, such a relationship would not render UME liable for breach under the Excess Loss policy.

In sum, Mallory has not pleaded facts sufficient to show a valid contract existed between Mallory and UME.  Therefore, Mallory has failed to state a claim for breach of contract.

  B. Bad Faith

UME has also moved to dismiss Mallory's crossclaim for bad faith.  In order to plead a claim for bad faith, which is also known as breach of the implied covenant of good faith and fair dealing, Mallory must allege: "(1) two parties entered into a contract under which the plaintiff reasonably expected to benefit; (2) the benefit was denied or obstructed by the other party's actions; and (3) the other party's actions were taken in bad faith." *Van Dorsten v. Provident Life and Acc. Ins. Co.*, 554 F. Supp. 2d 285, 287 (D. Conn. 2008).  A claim for breach of the implied covenant of good faith and fair dealing "presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 388 (Conn. 2004).  Additionally, "bad faith means more than mere negligence; it involves a dishonest purpose." *Habetz v. Condon*, 618 A.2d 501, 504 (Conn. 1992).  Therefore, "a mere coverage dispute or negligence by an insurer in conducting an investigation will not state a claim for bad faith against an insurer." *Martin v. Am. Equity Ins. Co.*, 185 F. Supp. 2d 162, 165 (D. Conn. 2002); *see also Mazzarella v. Amica Mutual Ins. Co.*, 774 Fed. App'x 14, 17 (2d Cir. May 16, 2019) (citing *Martin*); *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 798 (2013) ("bad faith is not actionable apart from wrongful denial of a benefit under [an insurance] policy").

Here, Mallory's claim fails at the threshold.  As discussed above, Mallory has failed to plead any contractual relationship with UME.  Without this, there can be no claim for breach of the implied covenant of good faith and fair dealing.  *See Valls v. Allstate Insurance Co.*, No. 3:16-

cv-1310 (VAB), 2017 WL 4286301, at *5 (D. Conn. Sept. 27, 2017) ("Connecticut law requires a breach of contract in order to plead bad faith"), *aff'd*, 919 F.3d 739 (2d Cir. 2019).

Nevertheless, even if Mallory had pleaded a contractual relationship, the claim would fail because the allegations evince a coverage dispute, rather than conduct of UME undertaken with a dishonest purpose. Mallory alleges that UME initially denied payment due to a lapse in coverage for failure to make premium payments. ECF No. 32 ¶ 21. Mallory also alleges that this lapse in coverage did in fact take place. *Id.* ¶ 20. The Excess Policy provides that, in the event the premium is not paid, the contract will terminate, and liability will be limited to claims paid by Mallory prior to the date of termination. ECF No. 47-4 at 14, 18. There is no allegation that Mallory affirmatively paid Ms. Levine's claim prior to the termination date and, in fact, the underlying lawsuit against Mallory alleges specifically that Mallory has never paid the claim. *See generally* ECF No. 1. It is clear, based on Mallory's own allegations, that UME had at least a colorable basis to deny the claims at issue and that the allegations in the crossclaims constitute, at best, a "mere coverage dispute" not subject to a claim of bad faith. *See Martin*, 185 F. Supp. 2d at 165. Thus, Mallory has failed to state a claim for breach of the implied covenant of good faith and fair dealing.

    C. <u>Indemnification</u>

For the first time in its sur-reply brief, Mallory raises the possibility that its crossclaims against UME are not in fact breach of contract claims at all but, rather, are claims for indemnification that were improperly labeled as breach of contract. ECF No. 89 at 4. The Court is not persuaded by Mallory's late-breaking shift in legal theories.

In recasting its complaint in this manner, Mallory attempts to compare its crossclaims against UME to the new third-party complaint for indemnification the Court permitted CPA to file against Soleau. *See* ECF Nos. 84, 86. In that third-party complaint, CPA alleges that, if it is found

liable to HSC, Soleau should bear that loss under the doctrine of common law indemnification because Soleau acted negligently, and CPA had no reason to expect such negligence. ECF No. 86. Of course, Mallory ignores that CPA's claim was expressly pleaded as indemnification from the outset, whereas Mallory's crossclaims against UME were pleaded as breach of contract and bad faith claims. Notably, Mallory's crossclaims against CPA include a claim for indemnification—so Mallory clearly was aware of the availability of this theory when it filed its crossclaims. *See* ECF No. 32 at 16-17 (Count II).

More importantly, however, Mallory's claim that UME denied coverage in violation of the Excess Policy is different in substance from CPA's third-party claim for indemnification against Soleau. At no point in Mallory's crossclaims against UME does it allege any facts sufficient to allege the elements of indemnification, namely that: UME negligently performed a task; that UME's active negligence, rather than Mallory's passive negligence, was the cause of the injury; that UME was in exclusive control of the situation; and that Mallory did not know of UME's negligence, had no reason to anticipate it, and reasonably relied on UME to not be negligent. *See Smith v. City of New Haven*, 258 Conn. 56, 66, 779 A.2d 104, 110–11 (2001). Rather, the crossclaims allege that UME breached a contract and acted in bad faith, causing Mallory damages. These allegations simply do not state a claim for indemnification.

Moreover, the crossclaims' allegations do not provide sufficient notice to UME to inform it that it was facing an indemnification claim. UME is entitled to "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*, 550 U.S. at 555; *Campoli v. HealthExtras, Inc.*, 232 F. App'x 20 (2d Cir. 2007) (holding that, where complaint that did not include a putative breach of contract claim and the elements of such a claim were not implied by the allegations, the complaint did not give fair notice to the defendant of the substance of the breach of contract

allegations and thus was appropriately dismissed). UME could not have expected, based on the allegations of the crossclaims sounding in breach of contract, that what Mallory actually intended to allege was a common law claim for indemnification. UME was not required to divine Mallory's intentions and could not have been prepared, based on the allegations of the crossclaims, to defend an indemnification claim.

At oral argument, Mallory requested the opportunity to amend its crossclaims if the Court finds that they fail to state a claim upon which relief can be granted. The Court rejects this invitation absent a written motion for leave to amend, to which UME can respond. If Mallory seeks leave to amend, it shall file a motion, in compliance with the Federal and Local Rules of Civil Procedure, detailing the reasons why it believes the Court should allow such an amendment. Any such motion for leave to amend shall be filed no later than May 20, 2022.

### IV.   CONCLUSION

For the foregoing reasons, UME's Motion to Dismiss is GRANTED. If no motion for leave to amend is filed by Mallory by May 20, 2022, the Clerk of Court is directed to terminate Underwriting Management Experts as a party to this action.

**SO ORDERED** at Hartford, Connecticut, this 6th day of May, 2022.

                                         */s/ Sarala V. Nagala*
                                         SARALA V. NAGALA
                                         UNITED STATES DISTRICT JUDGE